So, all right, how much time would you like to reserve for rebuttal? Good morning, Your Honors. I would like to reserve three minutes of time for rebuttal. And Professor Volokh has five minutes. Has five minutes. That's correct. All right. Go ahead, please. Good morning, Your Honors. And may it please the Court, Paul Avalor on behalf of the plaintiffs, Ryan Crownholm and mysiteplan.com. I plan to focus only on the First Amendment issues, given this Court's order from last week, and also the fact that the other claims in this case are really backups to that one claim. But I stand ready to answer any questions that Your Honors may have. The key legal error here is that both the Board and the District Court fail to recognize this is an as-applied case about speech. And they do that because they apply the wrong legal standards, the wrong governing cases. My clients draw pictures, pictures that anyone can draw and also that anyone can submit to California Building Departments. That is what the complaint says in great detail. Look at the simple site plans that are in our record and also we've provided in our opening brief, pages 6 and 7. That's what my clients do. An example of their site plan is at page 10 of our opening brief. There's no difference. They're used for the same thing. They contain the same information. The Board says my clients can't draw those pictures because of what they depict. That's the words in their citation. That's ER 89. Or now they say because they include measurements. Do you concede that the Act could be enforced against an unlicensed person who creates a map in connection with maintaining property lines? Your Honor, it depends on what you mean by maintaining property lines. The Act can be enforced against a person who is unlicensed and claims to be a surveyor or says he's doing something that has authoritative meaning. That is, I'm authoritatively determining what this property line is, where it is. That's absolutely not what my clients do, however. But can we look at your – let's look at the website. Look at the most popular site plan, okay? It says the purpose is the planning for a propane tank, which I would posit has public welfare connotations. And look at how many exact measurements it has to the property line. It has eight by my count. No, more than that, 1, 2, 3, 4, 5, 6, 7, 8, 9, 10 exact measurements of this fixed work to the property lines. It shows all the property lines. It has no disclaimers. Your Honor, it's no disclaimers. It's not a farmer's market or wedding planning event, which is, I think, what you'd like to focus on in your brief. Not at all, Your Honor. But why don't we talk about – you say in your reply brief that a site plan by definition is a drawing that provides visual image of property by depicting property boundaries, structures, and measurements. And it is called mysiteplan.com. So why wouldn't there be – why wouldn't 8726 apply? Your Honor, 8726 may apply to this. The problem is that as applied, it is unconstitutional. 8726 we concede is very broad. So let me just get – would you concede that 8726 would apply to this that has all the boundaries of the property lines? It has 10 different exact measurements of the fixed structure to the property lines. Would you concede that 8726 should be able to be enforced against this, your most popular site plan? I think there are two questions there. Does 8726 apply to that drawing? Yes, apparently it does. Should it be able to apply to the drawing? No, it shouldn't. That's the First Amendment problem. The First Amendment problem here is that 8726 sweeps into regulation the drawings that my clients do because they depict property boundaries or the location of homes or because they include measurements. So do all site plans as the examples that we've given you demonstrate. The problem here is that people have been drawing these site plans for years that include all of the same information. They include all the measurements. They include the property boundaries. They include the location of buildings. And that's never been a problem before. The problem is now that the breadth of the regulation is now sweeping in what my clients do. And the reasons for having surveying don't apply. The regulation has been consistent for a long time, right? What are you saying has changed? The prosecutorial discretion has changed? The judgment calls that the government is making? As we set out in the complaint, Mr. Crownholm was, in fact, taught how to draw these very same site plans by California building departments for submission for California building permits. And that's true for thousands of other people as we set out in the complaint. The building departments teach people how to draw these very same site plans, and they accept these very same site plans. Let me draw an analogy. Anyone can represent themselves in court. You can be a pro se litigant, right? But we still regulate lawyers, right? So if you wanted to submit a plan for your own home, that may mean or may not mean, I mean, it doesn't seem relevant to whether the government can regulate someone who wants to do this as a business commercially. A couple of responses there, Your Honor. First of all, it's homeowners and contractors have been doing this. Mr. Crownholm was a contractor when he started this, so it's not just self-drawings. Even if it were just self-drawings, that still implicates the government's claimed interest here, which is we don't want improper measurements. Well, a homeowner is no different than Mr. Crownholm is. Neither one of them is a surveyor, and therefore they both implicate the questions at the same time. As to the specific question about appearing in court, this is not a public forum. In fact, you can impose content and speaker-based requirements on people who appear in court all the time. If I were to deliver a mathematics lecture, you could stop me because that's not the purpose of this forum. If Your Honor has specific concerns about legal advice, I would advise the court turn its attention to the Upsolve case out of the Southern District of New York, which I think handles those questions very well and shows why some things are speech and some things are conduct, and that's the important conclusion. And that's the analysis here that the district court did not do. It's — and that's the analysis that this Court in Tingley said was an error. And Tingley said, look at Vizalign from the Fifth Circuit. The problem in Vizalign, which is also about surveying boards, the district court did not engage in the proper speech-conduct distinction, and it was remanded for further proceedings on that. The district court here — Right. But in Vizalign, the Fifth Circuit didn't decide whether the plaintiffs were being regulated based on their speech, correct? Correct.  What it said is you have to determine if you're being regulated based on your speech. The district court here did not determine if we were being regulated based on your speech. The district court here said the regulation of surveying is generally one of conduct, and therefore it only incidentally affects your client's speech. That's not the right analysis. That's in violation of NIFLA and Tingley and PCHS. Okay. I actually would disagree in that I think Tingley is actually more supportive of the government here, and cert was denied by the Supreme Court on Monday. It was over three dissents, Your Honor. But what Tingley says is that facts matter. You have to determine if the person before you is being regulated due to their speech or due to their conduct. And Tingley said on the facts in front of us, the speaker in Tingley was engaged in conduct. It was a licensed therapist trying to change the sexual orientation of minors. They said that's conduct. That's nothing like the factual predicate for this case where my clients draw pictures and those pictures are allowed to be submitted to building departments. Okay, but every case, NAAP, pickup, Tingley, that involved professional licensing regimes, they would all actually support the government here, correct? Respectfully, Your Honor, I disagree. Pickup says what the people in that case were engaged in was conduct. It was the exact same conduct as this court found in Tingley. AAP did not engage in this analysis because it predates all of these cases, and Conant, Your Honor, is actually I think the case that's most useful from this court, Conant and PCHS most useful in this court. Conant distinguished between regulations of speech, advice in that case, and regulations of what was conduct, that is writing out a prescription. So in Conant, it was the licensed physicians that were rather than unlicensed persons seeking to engage in a regulated activity, right? That is correct, Your Honor. Let's look at the cases that you do cite, Sorrell, IMDb. In those cases, there was actually specific information that was being prohibited, right? In IMDb, it was the date of birth and the age of a celebrity, the entertainment person that was being prohibited. In Sorrell, it was actually barring pharmacies from selling prescriber-identifying information for marketing purposes but allowing them to be sold to academic researchers. So for me, those are kind of different here. They're not the same as in my view. They're actually prohibiting specific speech, date of birth and age of a celebrity, and then this pharmacy prescribing and identifying information to specific purchasers. The board here is also prohibiting specific information, which is, as it says, the depiction of property lines or, alternatively, it says, measurements. It says you can draw these, you just can't include measurements. That's specific information that is prohibited under this provision. And, again, under Holder, which is the governing case here, you have to look at what it is that my clients are doing that triggers this application. Well, they're using information, that's speech. They're creating new information, that's speech. They're selling the information they've created, that's speech, again, under Sorrell. All those things are speech, and yet those are the things that are triggering the application of these statutes to my client. If my clients were doing something else, we would have a different case here. But no one yet has been able to identify the— Can we look at the specific subsections of 8726 that your client has been alleged to have violated? Yes, Your Honor. Number one, locates, relocates, establishes, reestablishes, or retraces the alignment or elevation for any of the fixed works embraced within the practice of civil engineering. Now, I think you would agree with me your farmer's market wedding event examples wouldn't fall within civil engineering, would they? I can't actually tell you that, Your Honor. What the board says, and this is in its brief at 21 through 22 and again at footnote 13, is that if those drawings include measurements, then they are regulated. And the district court below said that my clients were prohibited from doing site plans for permits and for other uses, the other uses being these sorts of drawings, that's ER-57. That goes to show, Your Honor, that the regulation here is directly tied into what the drawings show, not some other thing. There's been some notion here that what this really is is a prohibition on submitting information to the government. But that's not it, and we know that for four reasons. Site plans are legal to draw by other non-surveyors, and they're legal to submit by other non-surveyors. That's ER-69 and ER-99. And, of course, we know that non-surveyors are taught how to draw and submit these things. The board's own position is that it doesn't turn on submission. It turns on what the drawing depicts. Does it have measurements? The district court agreed with that and said it's other uses as well that's restricted. And there's nothing on the face of 8726 that turns on submission to the government.  Lots of drawings may show this, but that doesn't mean that all of those drawings implicate the government's reason for restricting the practice of surveying, which we agree they can do. This is not a challenge to the practice of surveying laws generally. This is simply a lawsuit that says the application here to these particular facts doesn't work. It doesn't work under the First Amendment or other grounds, but primarily under the First Amendment because this is simply informational. And with that, I'd like to try and reserve the balance of my time, Your Honor. All right. You have a minute and 55 seconds. Your Honors, Eugene Volokh representing Amica CMB. So as I heard from the bench, questions, I think, about two particular issues here. One is the content discrimination here. And we think that this case involves content discrimination just as much as Sorrell and IMDb. And probably the most on-point precedent is this Court's very recent decision in Project Veritas v. Schmidt, where the Court — I'm sorry, is the timer correct? Oh, I'm sorry. It didn't reset the time. How much time has passed? He has five minutes. He's used like 30 seconds. Oh, okay. I'm sorry. Set it for four minutes, 30 seconds, please. Thank you. Thank you, Your Honor. My apologies for the interruption. So Project Veritas v. Schmidt involved a restriction also on creating information. There it was, audio recording. And this Court struck it down as content-based. And why? It noted that the law's applicability plainly pivots on the content of the recording. For example, there, the law distinguished recording law enforcement officials from other government officials or recording felonies endangering human lives from recording similar conduct during commission of a misdemeanor. Likewise here, the law distinguishes depicting buildings and property lines and highways, the buildings and property lines being fixed works, from depicting other things. So therefore, it is indeed a content-based restriction. It's a content-based restriction on speech, and it is not limited to professional client speech. My client is primarily focused on the overbreadth argument. This law applies to speech to the public as a whole. If one, for example, wants to draw a map to include on a website complaining about somebody else's development or in a newspaper article, the law applies to submissions to, say, a planning board where somebody says, you know, I don't like my neighbor's proposal, and here is a map of what this person would ultimately be doing. Even to the extent it is limited to professional client speech, under Tingley, we think that it is still nonetheless fully protected. Tingley recognized that as a general matter, NIFLA, the Supreme Court in NIFLA, rejected a special professional client speech exception. It focused there on the speech being integral to the conduct of psychotherapy, and to the extent it recognized a special exception for medical professional speech, this court stressed that health professions differ from other licensed professions. There is a historical tradition of restricting medical practices without, say, forbidding architects or accountants from engaging in similar behavior, that is to say, in speaking without a license. So we think that Tingley is not particularly relevant to a case such as this, because of its focus on the longstanding tradition of regulating health care, because of the physical danger caused there. Is there any physical danger from relocating a propane tank in the wrong location? Is there any public welfare concern about building on a sinkhole? Is there any public welfare concern about a building collapsing? Because it might not be correctly located. The site plan may be incorrect. Your Honor, there may be these kinds of concerns as to particular kinds of things, but this law is not limited to things that are aimed at, say, building a particular project on one's own land. Certainly the building of the project could be restricted. So you're saying that there could be appropriate enforcement actions based on this statute, right? You're not saying the statute itself can never be enforced in an appropriate manner, are you? Your Honor, we think that the statute is facially overbroad and, therefore, is facially invalid. We think a narrower statute could be ---- But the Supreme Court in Hansen just really limited the overbreath analysis, didn't it? Your Honor ---- And you have to look at the good and the bad, and if the good outweighs, then you can't just throw it out. Your Honor ---- And I'm going to let you know, because it destroys some good along with the bad, invalidation for overbreath is not to be casually employed, even assuming that the law application to all of that speech is unconstitutional. The ratio of unlawful to lawful applications is not lopsided enough to justify the strong medicine of facial invalidation for overbreath. That's the Supreme Court just last term, 2023. Yes, Your Honor. The court in Hansen reaffirmed what it had held, which is that overbreath has to be substantial. The complaint in this case alleges that, in fact, the law is applicable to a very wide range of speech that is constitutionally protected. And likewise, in the Stevens case, which the Supreme Court has never reversed, the court said, look, on the face of this statute, it does appear that it's substantially overbroad. Likewise, in the United States ---- Your time has expired. Yes, Your Honor. So please wrap up. I just wanted to close by saying United States v. Rondo, this Court, to be sure, before Hansen, but I think quite consistently with Hansen, likewise made clear that a statute could be facially overbroad precisely because it applies to some situations, even though it acknowledged there were others ---- excuse me, unconstitutionally applies to some, even though others would be constitutional. Thank you, Your Honor. All right. Thank you very much. Thank you. Okay. Counsel for Moore? What? I'm sorry. We didn't hear that. I thought they had reserved some time for rebuttal. They have, and they go after you because they get to rebut you. Right. Sorry. Sorry, Your Honor. Sharon O'Grady for appellees in this matter. The statute itself regulates conduct, which is locating, relocating, tracing, As the district court found, that is not expressly aimed at speech. And for more than a century, the law has been settled that states may oppose licensing requirements on professions without violating the First Amendment subject to rational basis review. California and every state requires the licensing of land surveyors. And California has done so for more than a century. So why wouldn't 8726 apply to the person who's drawing a site map for a wedding venue or a farmer's market or a menu for children at a restaurant? Like, what is it in this statute, the text that says ---- go ahead. If the statute depicted specific measurements between a property line and structures, then it is a site map subject to regulation. But where does it specifically say that? It just says locates, relocates, establishes, reestablishes, or retraces any property line or boundary. It doesn't say it with the specificity you just said. Well, location itself is a relational term. You locate something by reference to what's around it, and that's what the statute does. The two opinions from the Attorney General's Office that were cited in their brief that we discussed talk about it in relation to measurements of property line, and it's generally used for planning purposes. But the reason I'm saying that technically it could apply to other circumstances is if you have a site map with that kind of precision, they can do exactly what they're doing and just say, this is for party planning purposes, and the person can go and submit it, and it can be relied on for boundaries, and it can be misused. But they also ---- the plaintiffs also prepare floor maps. There's nothing wrong with floor maps. There's nothing ---- planning departments can actually decide in circumstances that a site plan is not required. But if a site map is required, it has to be done by a professional. So why isn't it a problem for your position that apparently homeowners can prepare their own site plans and submit them without having a license? I mean, doesn't that create the same kind of safety, public welfare problems as you're alleging my site plans do? I think one could argue there are differences, but, in fact, the law does not discriminate. It is not okay for homeowners and contractors to do it. The law applies to any person, including government employees. So the fact that local agencies might accept site plans from homeowners, whether they're prepared by mysiteplan.com or whether they do it, doesn't make it legal. If it is a site plan that locates through the boundaries of property, then it has to be done by a licensed surveyor, and there are important reasons for that, as the land surveyor's amicus illustrated some, that property lines matter. And, you know, in California, your home is one of the biggest investments, maybe the biggest investment. So is the government singling out Mr. Crownholm then? Absolutely not. Why not, if everyone's violating the law? Because the statute says the board shall enforce against all violations that are brought to its attention. Like many other boards within the state of California, the board has a complaint system. They receive complaints, and they investigate every complaint that they receive. If they don't receive a complaint, they don't investigate it. So the distinction is not between homeowners and contractors and people like Mr. Crownholm. It's between people who get caught and people who don't get caught, really. And, you know, just like every person who speeds on the highway doesn't get pulled over, every person who submits an improper site plan, if a complaint is not made and it's not brought to the board's attention, the board doesn't have any resources or mandates. The board is presumably now aware that at least Contra Costa County, the city of San Gabriel, are instructing homeowners as to how to prepare site plans to be submitted to the planning department. So I guess I'm not sure how the argument can be that the board's just not aware of any other instances of violation. Go ahead. Excuse me. The problem is this, Your Honor, that it is not a violation of law for someone to accept a site plan. And the board does outreach to counties and local agencies, but they can't, but the law doesn't control what they accept. I mean, the board doesn't have jurisdiction over people who accept improper site plans any more than the medical board has recourse against patients who accept treatment from someone who's not licensed. But all violations that are brought to the board's attention are investigated, assuming that the complaint states something that would be a violation of the law, not if they're complaining about how much someone charged them. And we submitted in opposition to the motion for preliminary injunction a whole slew of complaints that the board had acted on and actually had issued citations. So the board is not singling out Mr. Crownholm. Mr. Crownholm got caught because someone complained. The board investigated. It determined there was a violation, and it issued a citation. There's no discriminatory treatment. There's no classification contained in the statute. I think a statute could barely be written to exempt homeowners because they have responsibility. Mr. Crownholm disclaims the accuracy of his maps and disclaims all liability for their use. So the planning department receives a site plan that has representations about where the improvements are located relative to boundaries, trees, hills, slopes. And that is a representation that they invite reliance on, but yet they have neither the education or training, and they actually disclaim that what they're presenting is accurate. Surely it passes rational basis review or even heightened scrutiny that the state of California can regulate and prevent that use. And the court very specifically was aware that it was an as-applied challenge and actually commented on what the site plan advertises that he uses. This isn't something where he has some unique situation. You don't have a schoolchild here who's been cited for creating a map for geography. That is not what's going on here. People like Mr. Crownholm and MySitePlan.com are exactly what the public needs to be protected against. And I believe that the National Association for Advancement of Psychoanalysis and the Tingler case are pretty squarely on point, that rational basis review is the standard. I believe that the court correctly found that the state, and this court and Gilbertson, has found that the state has an important interest in regulating land surveying. What about Professor Volokh's point that the state has a stronger interest in regulating health care? The two are not mutually exclusive. But people obviously, as Your Honor's illustration, if you locate a propane tank in the wrong place, there are health implications for land surveying also. But it isn't an either-or proposition. And this court in Smith v. California applied rational basis review to engineering, which is very similar to land surveying. So it isn't uniquely doctors that can be regulated and not other professions. And, you know, as the cases we cite, the Smith v. California, 1964, applied rational basis to the licensing requirements for engineers. And this is not even like, you know, at least in Tingley, the people were qualified. And in NAP, even though they did not satisfy the California licensing requirements, they were highly educated and qualified elsewhere. Here, there is not even a pretense that the plaintiffs here are competent to do land surveying. They are using part of the technology that land surveyors use, but without any of the knowledge, without any of the understanding of the actual site. And that does have implications for public safety. It also affects neighbors. You know, if someone builds a nonconforming house over a property line, that hurts not just their customers, who may or not be aware that there's no recourse behind their product, but it affects their neighbors, it affects the public, properties that abut. And we believe that the law is amply— that the law clearly satisfies rational basis, and even the kind of heightened scrutiny that the Brokamp court applied in the New York case, a slightly different standard. And there, again, you had someone highly qualified, and the court said, even so, they still have to follow the requirements because otherwise the state can't regulate them and can't monitor their conduct. They want to be able—these plaintiffs want to be able to operate without any oversight by the Land Surveying Board, and that does implicate public health and public safety and clearly is within the police power of the state. I don't have any further questions. I don't either. Let me hear from my colleagues. Nobody does. Thank you very much. Thank you. All right. I believe you have— Okay, thank you. One minute and 55 seconds. Go ahead, please. Yes, Your Honor. Thank you. Just a couple of points. First of all, Tingley says that PCHS controls the speech conduct analysis where the court has not previously addressed the issue. This court has not previously addressed this issue. That's at page 1076 of Tingley. Second, PCHS says Holder controls that. Holder was also a case in which the regulation was aimed at conduct, not at speech, and yet the Supreme Court said because it's triggered by speech, it's subject to First Amendment scrutiny. This inquiry is key because the — what Tingley says is that conduct gets rational basis review, but PCHS says that incidental regulation of speech— Yeah, but isn't that dicta in PCHS? Because in PCHS, they found that it was, in fact, speech. Your Honor, if it is dicta, it is a correct statement of what the law is. Brokamp, I think— So you would agree that that's not binding on this court because that isn't — that isn't the determination. It's the correct answer, Your Honor, even if it is dicta. As for safety, my clients say repeatedly, expressly, our drawings are only used where building departments accept drawings from non-surveyors, and there are lots of contexts in which building departments knowingly accept drawings from non-surveyors. It's the building departments that have the health and safety component here, and if they are willing to accept drawings from non-surveyors, there's no basis on which you can say that my clients' drawings are different than that or more dangerous than that. And the Board admitted everyone is violating this all of the time, and yet there's no evidence of actual harm, which is — at least allows us to go forward under a motion to dismiss standard because the application of the statute to my clients' activities simply isn't justified under rational basis, or it's certainly not under any sort of First Amendment scrutiny. Thank you. Your time has expired. Thank you, Your Honor. All right. Thank you to all counsel for the very helpful argument today. All rise. This Court for this session stands adjourned.
judges: KOH, THOMAS, DESAI